ORIGINAL

FLORENCE T. NAKAKUNI #2286
United States Attorney
District of Hawaii

LESLIE E. OSBORNE, JR. #3740
Chief, Criminal Division

LAWRENCE L. TONG    #3040
Assistant U.S. Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Blvd., Box 50183
Honolulu, Hawaii  96850
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
E-mail:  Larry.Tong@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAY 04 2012

at ___ o'clock and ___ min. ___ M.
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 11-00503-2 JMS |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OF PLEA AGREEMENT |
| | ) | |
| vs. | ) | |
| | ) | Date:  May 4, 2012 |
| JOHN D. OLIVER (02), | ) | Time:  2:00 P.M. |
| | ) | Judge: J. Michael Seabright |
| Defendant. | ) | |
| | ) | |

MEMORANDUM OF PLEA AGREEMENT

        Pursuant to Rule 11 of the Federal Rules of Criminal

Procedure, the UNITED STATES OF AMERICA, by its attorney, the

United States Attorney for the District of Hawaii, and the

Defendant, JOHN D. OLIVER, and his attorney, Jeffrey T. Arakaki,

Esq., have agreed upon the following:

        1.   Defendant acknowledges that he has been charged in

a Superseding Indictment with (a) conspiracy to commit mail fraud

and use fictitious obligations, (b) mail fraud, (c) money laundering, (d) conspiracy to submit false claims against the United States, and (e) submitting false claims against the United States, violations of Title 18, United States Code, sections 371, 1341, 1957 and 287.   Defendant further acknowledges that the Superseding Indictment includes a Forfeiture Allegation seeking the forfeiture of certain property pursuant to Title 18, United States Code, section 981(a)(1)(C) and Title 28, United States Code, section 2461(c).

2.   Defendant has read the charges against him contained in the Superseding Indictment, and those charges have been fully explained to him by his attorney.

3.   Defendant fully understands the nature and elements of the crimes with which he has been charged.

4.   Defendant will enter voluntary pleas of guilty to counts 1 and 18 of the Superseding Indictment, which charge him with conspiracy offenses, and agrees to forfeit his interest in certain money, currency, bank accounts, gold and silver collectible coins, and vehicles as property constituting or derived from proceeds defendant obtained as a result of the offense alleged in count 1 of the Superseding Indictment.   The United States agrees to move for a dismissal of the remaining counts of the Superseding Indictment at the time of sentencing.

2

5.   Defendant agrees that this Memorandum of Plea Agreement shall be filed and become part of the record in this case.

6.   Defendant enters these pleas because he is in fact guilty of conspiracy offenses as charged in the Superseding Indictment, and agrees that these pleas are voluntary and not the result of force or threats.

7. Defendant understands that the penalties for the offenses to which he is pleading guilty include are as follows:

a.   as to count 1 (conspiracy to commit mail fraud and to use fictitious obligations), a maximum term of imprisonment of five (5) years, a fine of up to $250,000, plus a term of supervised release of not more than three (3) years, and the forfeiture of certain money, currency, bank accounts, gold and silver collectible coins, and vehicles which constitute proceeds, or were derived from, proceeds traceable to such offense;

b.   as to count 18 (conspiracy to submit false claims), a maximum term of imprisonment of five (5) years, a fine of up to $250,000, plus a term of supervised release of not more than three (3) years.

The Court must also award restitution under Title 18, United States Code, Section 3663A to all persons and entities that suffered a pecuniary loss as a result of the criminal conduct to which defendant is pleading guilty.  Defendant

3

understands that the Court will determine the amounts of restitution to be ordered, as well as the persons and entities entitled to such restitution, with the assistance of the United States Probation Office.

In addition, the Court must impose a $100 special assessment as to each count to which the Defendant is pleading guilty. Defendant agrees to pay $100 for each count to which he is pleading guilty to the District Court's Clerk's Office, to be credited to said special assessments, before the commencement of any portion of sentencing. Defendant acknowledges that failure to make such full advance payment in a form and manner acceptable to the prosecution will allow, though not require, the prosecution to withdraw from this agreement at its option.

Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offenses to which defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any

4

immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

8. Defendant admits the following facts and agrees that they are not a detailed recitation, but merely an outline of what happened in relation to the charges to which defendant is pleading guilty:

### Conspiracy to Commit Mail Fraud and Use Fictitious Obligations (Count 1)

Beginning on a date before February 2008, and continuing through February 2011, defendant agreed with others (1) to carry out a scheme to obtain money by making false representations, promises and statements, and to use the mails in furtherance of the scheme, and (2) to make, use and sell fictitious documents purporting to be financial instruments issued under the authority of the United States and the State of Hawaii.

Defendant, his wife Mahealani Ventura-Oliver, Pilialoha Teves, Lehua Hoy and Petro Hoy, and others were associated with groups in Maui known as the "Hawaiiloa Foundation," "Ko Hawaii Pae Aina," and "The Registry" (collectively "HLF"). HLF conducted seminars on Maui and elsewhere, offering to teach participants about Hawaii history and property rights. At the seminars, Ventura-Oliver described her background and studies in Hawaii property law. Petro Hoy also spoke at the seminars, falsely claiming to be an "ambassador," and vouching for Ventura-

Oliver's credibility, thereby adding to the perceived legitimacy of the program. HLF also offered private meetings with seminar participants, during which defendant, Mahealani Ventura-Oliver, Pilialoha Teves and Lehua Hoy marketed a debt assistance program which they claimed could eliminate mortgage, credit card and other debt. HLF's customers were told that each individual has an account at the United States Treasury that can be accessed through various "bonds," "promissory notes" and other documents purportedly issued by the United States Treasury or the State of Hawaii. In return for the payment of a "kokua," or fee of approximately $1,500 to $10,000, HLF prepared bonds and other documents which they claimed could be used to pay off their customers' mortgages and other debts.

During the private meetings, Ventura-Oliver explained the process to HLF's customers. Defendant assisted Ventura-Oliver in answering questions about the process. Teves and Lehua Hoy typically obtained information from HLF customers about their debts, collected the payment of fees, and prepared bonds and other documents to be used by the customers. Defendant, Mahealani Ventura-Oliver, Teves and Lehua Hoy advised HLF's customers to send, via United States mail, the documents to the United States Treasury, the Federal Reserve Bank, the State of Hawaii and their creditors, as a purported means of paying their existing debts, and to stop mortgage foreclosure and debt

collection efforts.  HLF's customers were told the mailings were an integral part of the process, as the bonds only became effective when the debtors received them.

Between May 9, 2008 and March 4, 2009, HLF collected approximately $468,573.65 in fees from more than 100 participants in its program.  The money paid by HLF's customers was deposited into accounts maintained by defendant and Mahealani Ventura-Oliver.  During that time, defendant knew that the documents prepared by HLF were not real financial instruments that could be used to pay debts.  In February 2008, defendant and Ventura-Oliver tried to use bonds to pay their mortgage, but were told by Chase Bank that the documents did not constitute legal payment. Defendant and Ventura-Oliver also tried to use the bonds to pay their credit card debt to First Hawaiian Bank, and were told the bonds were not legitimate financial instruments.  Defendant, Ventura-Oliver, Teves, Lehua Hoy and Petro Hoy thereafter promoted the HLF program to customers, and collected fees, while knowing that the bonds that were prepared were fictitious instruments.

### Conspiracy to Submit False Claims (count 18)

At some point between May 2008 and May 2009, defendant and Mahealani Ventura-Oliver agreed to submit false and fraudulent claims upon the Internal Revenue Service ("IRS"), an agency of the United States.  Defendant and Ventura-Oliver agreed

to submit false Form 1040 tax returns, on their own behalf and on behalf of others, seeking tax refunds to which they knew the filers were not entitled. Defendant prepared documents including IRS Forms 1099-OID ("Original Issue Discount"), which falsely listed amounts of debts as income, and the same amounts as federal income tax withholdings. Defendant also prepared IRS 1040-V payment vouchers falsely listing the amounts of the debts as payments made to the IRS, and IRS Forms 56 ("Notice Concerning Fiduciary Relationship"), which falsely identified the Secretary of the United States Treasury as a fiduciary authorized to act on the tax filer's behalf. Defendant then prepared IRS Forms 1040 tax returns which falsely claimed tax refunds based on the same amounts stated in the 1099-OID forms.

Defendant initially prepared tax returns in May 2008 on his own behalf, using the foregoing process. The IRS responded to the returns by sending defendant notices indicating that his returns were frivolous. Defendant thereafter prepared additional tax returns using the same process which he knew the IRS regarded as frivolous. The returns included an additional tax return on his own behalf, a joint tax return on behalf of himself and Ventura-Oliver, and other returns on behalf of persons who participated in HLF's debt elimination program. Those returns sought tax refunds of more than $2.5 million, based on information that defendant knew was false and fraudulent.

Forfeiture Admissions

Defendant and Mahealani Ventura-Oliver obtained control of the fees paid by HLF's customers for their participation in the debt elimination program.  Defendant and Ventura-Oliver kept a portion of those fees in cash, and deposited the balance in various checking and savings accounts which they jointly maintained at the Maui County Federal Employees Credit Union. Defendant and Ventura-Oliver transferred a portion of those funds to Pilialoha Teves, Lehua Hoy and Petro Hoy.  Defendant and Ventura-Oliver also used a portion of those funds to purchase other property, including the gold and silver collectible coins, 2005 Toyota Tacoma pickup truck and 2006 Toyota Tacoma pickup truck described more specifically in the Forfeiture Allegation in the Superseding Indictment.  Defendant admits that the United States currency, funds in bank accounts, gold and silver collectible coins, and vehicles described in paragraph A of the Forfeiture Allegation constitute proceeds of, or were derived from proceeds traceable to, the conspiracy offense charged in count 1 of the Superseding Indictment.  The property subject to forfeiture (collectively the "Subject Property") is more specifically described as follows:

a.  A personal money judgment in the amount of $468,000, which represents the approximate amount of proceeds obtained as a result of the mail fraud scheme alleged in Counts 1-16 of this Superseding Indictment;

b.   $7,807.79 seized on April 7, 2009, from Maui
     County Federal Credit Union ("MCFCU") Account
     Number xxxxxx01-01 held in the name of Hawaiiloa
     Foundation c/o MAHEALANI VENTURA-OLIVER and JOHN
     D. OLIVER;

c.   $4,958.15 seized on April 7, 2009, from MCFCU
     Account Number xxxxxx01-75 held in the name of
     Hawaiiloa Foundation c/o MAHEALANI VENTURA-OLIVER
     and JOHN D. OLIVER;

d.   $692.88 seized on April 7, 2009, from MCFCU
     Account Number xxxxxx03-01 held in the name of
     MAHEALANI VENTURA-OLIVER;

e.   $182.96 seized on April 7, 2009, from MCFCU
     Account Number xxxxxx03-75 held in the name of
     MAHEALANI VENTURA-OLIVER;

f.   $788.65 seized on April 7, 2009, from MCFCU
     Account Number xxxxxx01-01 held in the name of
     JOHN D. OLIVER TRUST c/o JOHN D. OLIVER;

g.   $2,748.84 seized on April 7, 2009, from Hawaii
     National Bank Account Number xxxx9424 held in the
     name of PILIALOHA K. TEVES TRUST c/o PILIALOHA K.
     TEVES and an individual whose initials are K.K.T.;

h.   $1,509.43 seized on April 7, 2009, from Hawaii
     National Bank Account Number xxxxxx7653 held in
     the name of PILIALOHA K. TEVES TRUST c/o PILIALOHA
     K. TEVES and an individual whose initials are
     K.K.T.;

i.   $14,679.30 seized on April 7, 2009, from First
     Hawaiian Bank Account Number xxxx5438 held in the
     name of PETRO T. HOY TRUST c/o PETRO T. HOY;

j.   $43,300.00 in United States currency seized on
     April 7, 2009, from JOHN D. OLIVER and MAHEALANI
     VENTURA-OLIVER;

k.   $40,689.00 in United States currency voluntarily
     surrendered on April 30, 2009, by LEATRICE LEHUA
     HOY and PETER HOY;

l.   A cream 2005 Toyota Tacoma pickup truck bearing
     Hawaii license plate number MNA-551 and vehicle

10

identification number 5TETX22N15Z071504, and
registered to JOHN D. OLIVER, which was seized on
April 7, 2009, from JOHN D. OLIVER;

m.    A silver 2006 Toyota Tacoma pickup truck bearing
Hawaii license plate number 646-MDC and vehicle
identification number 5TENX62N76Z246033, and
registered to JOHN D. OLIVER and an individual
whose initials are I.K.A.C., which was seized on
April 7, 2009, from JOHN D. OLIVER; and

n.    Assorted gold and silver collectible coins which
were voluntarily surrendered on April 30, 2009, by
LEATRICE LEHUA HOY and PETER HOY.

9.   Defendant consents to the imposition of a personal

money judgment against him in the amount of $468,000, and agrees

to immediately and voluntarily forfeit to the United States all

of his right, title, and interest in the Subject Property and to

take all necessary actions to expeditiously implement this

forfeiture and to pass clear title to the Subject Property to the

United States.   These actions on defendant's part include, but

are not limited to, surrender of title, and the signing of a

Preliminary Order of Forfeiture, a Final Order of Forfeiture, and

any other relevant documents necessary to effect transfer of

title to the United States.

Defendant waives all interest in, and claims to, the

Subject Property, and hereby consents to the forfeiture of the

Subject Property to the United States.   Defendant knowingly and

voluntarily waives any claim or defense he may have under the

Eighth Amendment to the United States Constitution, including any

claim of excessive fine or penalty with respect to the forfeited

property.   Defendant knowingly and voluntarily waives his right to a jury trial on the forfeiture of the Subject Property.  The forfeiture may be processed through administrative, civil judicial, or criminal proceedings in the Government's sole discretion.  Defendant hereby waives, and agrees to the tolling of, any rule or provision of law limiting the time for commencing, or providing notice of, any administrative or civil judicial forfeiture proceeding with respect to the Subject Property, including but not limited to, such limitations contained in 18 U.S.C. § 983, 19 U.S.C. § 1621, and Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.  Defendant agrees to consent promptly upon request to the entry of any orders deemed necessary by the Government or the Court to complete the forfeiture and disposition of the Subject Property.  Defendant waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of forfeiture in the charging instrument, announcement of forfeiture in defendant's presence at sentencing, and incorporation of the forfeiture in the judgment.  If the Government elects to conduct the forfeiture criminally, defendant understands that the forfeiture of the Subject Property, and the imposition of the personal money judgment, will be part of the sentence imposed upon defendant in this case and waives any failure by the Court to advise defendant of this, pursuant to

12

Federal Rule of Criminal Procedure 11(b)(1)(J), during the change of plea hearing.  Pursuant to Rule 32.2(b)(4), defendant will promptly consent to the preliminary order of forfeiture becoming final as to defendant before sentencing if so requested by the Government to do so.

Defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive him, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement.  The forfeitability of the Subject Property pursuant to this agreement shall be determined as if defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed money judgment amount, is collected in full.

Defendant represents and warrants to the government that he has no interest, either direct or indirect, whether held in his own name, or in the name of another person or entity, in any other property, real or personal, that would be subject to forfeiture on the basis of violations covered by this Agreement. Defendant understands and acknowledges that the government is relying upon defendant's representations in entering into this Agreement.

Defendant further agrees that the forfeiture of the Subject Property shall not be treated as satisfaction of any

13

fine, restitution, reimbursement of cost of imprisonment, or any other monetary penalty this Court may impose upon defendant in addition to the forfeiture.

10.   Pursuant to CrimLR32.1(a) of the Local Rules of the United States District Court for the District of Hawaii, the parties agree that the charges to which the Defendant is pleading guilty adequately reflect the seriousness of the actual offense behavior and that accepting this Agreement will not undermine the statutory purposes of sentencing.

11.   Pursuant to CrimLR32.1(b) of the Local Rules of the United States District Court for the District of Hawaii and Section 6B1.4 of the Sentencing Guidelines, the parties stipulate to the following for the purpose of the sentencing of Defendant in connection with this matter:

a.   The conspiracy offense alleged in count 1 of the Superseding Indictment has a base offense level of 6.  See United States Sentencing Guidelines ("U.S.S.G.") § 2B1.1.

b.   The loss attributable to the conspiracy offense in count 1 is more than $400,000, but less than $1,000,000, which results in a 14 level enhancement to the offense level.  See U.S.S.G. §2B1.1(b)(1)(H).

c.   The conspiracy offense alleged in count 1 involved 50 or more victims, which results in a four (4) level increase to the base offense level.  See U.S.S.G. § 2B1.1(b)(2)(B).

d.   The conspiracy offense alleged in count 18 of the
Superseding Indictment involved the submission of false tax
returns seeking total refunds of more than $2.5 million but less
than $7 million, which results in an offense level of 24.   See
U.S.S.G. §§ 2T1.1 and 2T4.1(J).

e.   The United States Attorney agrees that
Defendant's agreement herein to enter into a guilty plea(s)
constitutes notice of intent to plead guilty in a timely manner,
so as to permit the government to avoid preparing for trial as to
Defendant.   Accordingly, the United States Attorney anticipates
moving in the Government's Sentencing Statement for a one-level
reduction in sentencing offense level pursuant to U.S.S.G.
§ 3E1.1(b)(2), if defendant is otherwise eligible.   The Defendant
understands that notwithstanding its present intentions, and
still within the Agreement, the prosecution reserves the rights
(1) to argue to the contrary in the event of receipt of new
information relating to those issues, and (2) to call and examine
witnesses on those issues in the event that either the probation
office finds to the contrary of the prosecution's intentions or
the Court requests that evidence be presented on those issues.

12.   The parties agree that notwithstanding the
parties' Agreement herein, the Court is not bound by any
stipulation entered into by the parties but may, with the aid of

the presentence report, determine the facts relevant to
sentencing.

13.   Pursuant to Section 6B1.4 of the Sentencing
Guidelines, the parties state that they are not presently able to
identify facts that are disputed for sentencing purposes.

14.   The Defendant is aware that he has the right to
appeal the sentence imposed under Title 18, United States Code,
Section 3742(a).  Defendant knowingly waives the right to appeal,
except as indicated in subparagraph "b" below, any sentence
within the maximum provided in the statute(s) of conviction or
the manner in which that sentence was determined on any of the
grounds set forth in Section 3742, or on any ground whatever, in
exchange for the concessions made by the prosecution in this plea
agreement.

a.   The Defendant also waives his right to
challenge his sentence or the manner in which it was determined
in any collateral attack, including, but not limited to, a motion
brought under Title 28, United States Code, Section 2255, except
that defendant may make such a challenge (1) as indicated in
subparagraph "b" below, or (2) based on a claim of ineffective
assistance of counsel.

b.   If the Court imposes a sentence greater than
specified in the guideline range determined by the Court to be
applicable to the Defendant, the Defendant retains the right to

16

appeal the portion of his sentence greater than specified in that guideline range and the manner in which that portion was determined under Section 3742 and to challenge that portion of his sentence in a collateral attack.

       c.  The prosecution retains its right to appeal the sentence and the manner in which it was determined on any of the grounds stated in Title 18, United States Code, Section 3742(b).

      15.  The Defendant understands that the District Court in imposing sentence will consider the provisions of the Sentencing Guidelines.  The Defendant agrees that there is no promise or guarantee of the applicability or nonapplicability of any Guideline or any portion thereof, notwithstanding any representations or predictions from any source.

      16.  The Defendant understands that pursuant to Guideline 6B1.1(c), this Agreement cannot be accepted or rejected by the Court until there has been an opportunity by the Court to consider a presentence report, unless the Court decides that a presentence report is unnecessary pursuant to Guideline 6A1.1. The Defendant understands that the Court will not accept an agreement unless the Court determines that the remaining charges adequately reflect the seriousness of the actual offense behavior and accepting the agreement will not undermine the statutory purposes of sentencing.

17.  Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.  If Defendant persisted in a plea of not guilty to the charges against him, he would have the right to a public and speedy trial.  The trial could be either a jury trial or a trial by a judge sitting without a jury.  The Defendant has a right to a jury trial.  However, in order that the trial be conducted by the judge sitting without a jury, the Defendant, the prosecution and the judge all must agree that the trial be conducted by the judge without a jury.

b.  If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random.  Defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges.  The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that the Defendant is presumed innocent, and that it could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt.

c.  If the trial is held by a judge without a jury, the judge would find the facts and determine, after hearing

18

all the evidence, whether or not he or she was persuaded of the Defendant's guilt beyond a reasonable doubt.

d.   At a trial, whether by a jury or a judge, the prosecution would be required to present its witnesses and other evidence against the Defendant.  Defendant would be able to confront those prosecution witnesses and his attorney would be able to cross-examine them.  In turn, Defendant could present witnesses and other evidence on his own behalf.  If the witnesses for the Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court.

e.   At a trial, the Defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify.

18.   Defendant understands that by pleading guilty, he is waiving all of the rights set forth in the preceding paragraph.  Defendant's attorney has explained those rights to him, and the consequences of the waiver of those rights.

19.   Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreement reached, other than those set forth in this Agreement, to induce Defendant to plead guilty.

20.   Should the Court refuse to accept this Agreement, it is null and void and neither party shall be bound thereto.

The parties understand that the Court's rejection of any stipulation between the parties does not constitute a refusal to accept this Agreement since the Court is expressly not bound by stipulations between the parties.

21. Defendant understands that the prosecution will apprise the Court and the United States Probation Office of the nature, scope and extent of Defendant's conduct regarding the charges against him, related matters, and any matters in aggravation or mitigation relevant to the issues involved in sentencing.

22. The Defendant agrees that he will fully cooperate with the United States.

a. He agrees to testify truthfully at any and all trials, hearings, or any other proceedings at which the prosecution requests him to testify, including, but not limited to, any grand jury proceedings, trial proceedings involving codefendants and others indicted later in the investigation, and related civil proceedings.

b. Defendant agrees to be available to speak with law enforcement officials and to representatives of the United States Attorney's Office at any time and to give truthful and complete answers at such meetings, but he understands he may have his counsel present at those conversations, if he so desires.

c.   Defendant agrees he will not assert any privilege, including the spousal confidential communications and adverse testimony privileges, to refuse to testify at any grand jury, trial, or other proceeding, involving or related to the crimes in this Superseding Indictment or any subsequent charges related to this investigation, at which the prosecution requests him to testify.

d.   Pursuant to § 1B1.8(a) of the Sentencing Guidelines, the prosecution agrees that self-incriminating information provided pursuant to this Agreement to cooperate will not be used in determining the applicable guideline range, except as may be provided in this Agreement and under § 1B1.8(b) of the Sentencing Guidelines.

23.   In the event that the Defendant does not breach any of the terms of this Agreement but the Court nonetheless refuses to accept the Agreement after Defendant has made statements to law enforcement authorities or representatives of the United States Attorney's Office pursuant to this Agreement, the prosecution agrees not to use said statements in its case in chief in the trial of the Defendant in this matter.   Defendant understands that this does not bar the use of information and evidence derived from said statements or prohibit the use of the statements by the prosecution in cross-examination or rebuttal.

24.   Pursuant to Guidelines Section 5K1.1 and Rule 35(b), Federal Rules of Criminal Procedure, the prosecution may move the Court to depart from the Guidelines on the ground that the Defendant has provided substantial assistance to authorities in the investigation or prosecution of another person who has committed an offense.   Defendant understands that:

a.   The decision as to whether to make such a request or motion is entirely up to the prosecution.

b.   This Agreement does not require the prosecution to make such a request or motion.

c.   This Agreement confers neither any right upon the Defendant to have the prosecution make such a request or motion, nor any remedy to Defendant in the event the prosecution fails to make such a request or motion.

d.   Even in the event that the prosecution makes such a request or motion, the Court may refuse to depart from the Guidelines range.

///

///

///

///

///

///

DATED:  Honolulu, Hawaii, <u>May 4, 2012</u>    .

AGREED:


FLORENCE T. NAKAKUNI                    JOHN D. OLIVER
United States Attorney                  Defendant
District of Hawaii


LESLIE E. OSBORNE, JR.                  JEFFREY T. ARAKAKI, Esq.
Chief, Criminal Division                Attorney for Defendant


LAWRENCE L. TONG
Assistant U.S. Attorney


<u>United States v. John D. Oliver</u>
Cr. No. 11-00503-2 JMS
"Memorandum of Plea Agreement"